UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VICKI L. FARRELL, | CASE NO. 1:22-CV-02020-SL |
| Plaintiff, | JUDGE SARA LIOI |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Vicki L. Farrell challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On November 8, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Nov. 8, 2022). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Farrell filed for DIB and SSI on June 29, 2020, alleging a disability onset date of March 1, 2019. (Tr. 111-19, 188-94). The claims were denied initially and on reconsideration. (Tr. 77-90, 93-108). Ms. Farrell then requested a hearing before an Administrative Law Judge. (Tr. 146-47). Ms. Farrell (represented by counsel) and a vocational expert (VE) testified at a hearing before

the ALJ on September 13, 2021. (Tr.33-76). On November 23, 2021, the ALJ issued a written

decision finding Ms. Farrell not disabled. (Tr. 9-32). The Appeals Council denied Ms. Farrell's

request for review, making the hearing decision the final decision of the Commissioner. (Tr. 2-8;

*see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481). Ms. Farrell timely filed this action

on November 8, 2022. (ECF #1).

FACTUAL BACKGROUND

## I.   PERSONAL AND VOCATIONAL EVIDENCE

Ms. Farrell was 59 years old on the alleged onset date and 62 years old at the administrative

hearing. (Tr. 77). She has worked full-time as a receptionist and part-time as a grocery store cashier.

(Tr. 40, 47).

## II.   RELEVANT MEDICAL EVIDENCE

Knee X-rays taken in October 2018 revealed degenerative joint disease of the medial

compartment of both knees, more advanced in the right knee. (Tr. 352-53).

On February 22, 2019, Ms. Farrell visited the emergency department, where she

complained of moderate, achy knee pain and felt "like something is out of place" in the left knee.

(Tr. 394). Physical examination revealed tenderness, decreased range of motion, and left knee

swelling. (Tr. 397). Imaging revealed advanced tricompartmental osteoarthritis, most notable in

the patellofemoral and medial compartments, with possible loose bodies in the knee joint. (Tr.

453). For pain relief, the treating provider advised Ms. Farrell to use analgesics, elevation, and rest.

(Tr. 398).

On September 11, 2019, Ms. Farrell met with Jennifer Tessman, CNP, to establish care.

(Tr. 386). She complained of joint pain in the bilateral knees and ankles, erythema, and bilateral

lower extremity edema. (*Id.*). On physical examination, NP Tessman noted obesity, significant

bilateral lower extremity edema (+3), peripheral vascular disease changes in the lower extremities,

and decreased range of motion in the knees. (Tr. 388-89). Ms. Farrell expressed worry about using

topical Voltaren gel and reported a desire to not be on medication. (Tr. 386). NP Tessman

encouraged physical activity and a healthier diet. (*Id.*). She also ordered lab tests and prescribed

two medications to control essential hypertension. (Tr. 389).

On November 8, 2019, Ms. Farrell followed-up with NP Tessman, complaining of terrible

pain in her knees due to arthritis. (Tr. 382). Ms. Farrell acknowledged the necessity of getting

control of her weight. (*Id.*). NP Tessman diagnosed obesity and type 2 diabetes mellitus and

referred Ms. Farrell to a weight management program, advised her on dietary changes, and

provided her with an easy exercise routine. (Tr. 383-84).

On November 20, 2019, Ms. Farrell met with Angela Grady, D.P.M., for arthritic pain in

both feet. (Tr. 380). She reported the pain is sometimes so bad she can "barely walk." (*Id.*). She

described the pain as constantly sore and achy, located mostly on the top of her feet, and denied

numbness, tingling, and burning sensations. (*Id.*). On examination, Dr. Grady noted bilateral

midfoot edema and chronic venous stasis changes in the bilateral ankles and legs, decreased range

of motion with pain bilaterally at the first metatarsophalangeal joints, and pain in the midfoot

joints. (Tr. 381). Otherwise, examination revealed intact sensation and normal muscle strength.

(*Id.*). For midfoot pain, Dr. Grady suggested Ms. Farrell ice the dorsum of her feet and apply

Voltaren gel two to three times a day. (*Id.*).

On August 18, 2020, Ms. Farrell met with Anastasia M. Driscoll, APRN-CNP, for weight

management. (Tr. 545). NP Driscoll identified Ms. Farrell's co-morbidities to obesity, including

mixed hyperlipidemia, uncontrolled type 2 diabetes mellitus with hyperglycemia, essential hypertension, vitamin D deficiency, obstructive sleep apnea, and bilateral osteoarthritis in the knees. (Tr. 545-46). NP Driscoll recommended dietary changes and regular exercise. (Tr. 550-51).

On August 28, 2020, during a telehealth appointment with NP Dowell, Ms. Farrell reported trying to keep her blood sugar down and endorsed frustration because she knows her knees are worse due to her weight but has trouble with exercise and activity due to her knee pain. (Tr. 540-41). NP Dowell ordered Ms. Farrell to check her sugars daily. (Tr. 544).

On September 23, 2020, Ms. Farrell met with Sean McMillin, D.P.M., for evaluation of her bilateral foot pain, right greater than left. (Tr. 534). She endorsed pain at the dorsal midfoot and near the balls of the feet that worsens throughout the day. (*Id.*). On examination, Ms. Farrell exhibited diminished sensation in her feet, reduced ankle range of motion, and mild dorsal spurring at the midfoot. (Tr. 537). Dr. McMillin assessed bilateral midfoot arthritis, bilateral metatarsalgia, and peripheral neuropathy, and prescribed diabetic shoes with custom inserts. (Tr. 537-38).

On October 7, 2020, Ms. Farrell met with NP Dowell (nee Tessman) and reported doing well but continued to struggle with her diet and left-sided neuropathy. (Tr. 521). NP Dowell noted Ms. Farrell's hypertension and diabetes mellitus were improving and ordered her to continue taking her antihypertensive and diabetes medications as prescribed and monitor her kidney function yearly. (Tr. 524).

On October 15, 2020, Ms. Farrell met with Travis Cleland, D.O., for evaluation of her knee pain. (Tr. 515). Ms. Farrell described bilateral knee and feet pain that does not radiate or refer to other parts of her body. (*Id.*). She reported diclofenac helped but she cannot take it

anymore due to issues with her kidneys. (*Id.*). Ms. Farrell received knee injections in the past that were helpful. (*Id.*). Examination of the knees revealed bilateral concordant pain at the end-range of motion and concordant tenderness at the medial joint line. (Tr. 517-18). She had painful patellar grind in the right knee and a painful valgus stress test in the left knee. (Tr. 518). Dr. Cleland diagnosed bilateral knee osteoarthritis and obesity, ordered bilateral knee X-rays, and advised Ms. Farrell to lose weight and continue using Voltaren gel as needed. (Tr. 518). X-rays revealed advanced end-stage bilateral medial femorotibial, moderate bilateral patellofemoral, and mild-to-moderate bilateral lateral femorotibial compartment knee osteoarthritis and a mild right genu varus deformity (bow leg). (Tr. 561).

On November 19, 2020, Ms. Farrell met with NP Dowell for a follow-up appointment regarding her diabetes mellitus. (Tr. 511). She reported being unwilling to start Victoza after reading about some of the side effects but would take an oral medication to help control her blood sugars. (*Id.*). Ms. Farrell also reported bilateral knee pain and a desire to have them replaced. (*Id.*). NP Dowell stated Ms. Farrell would need to get her blood sugar under control before anyone would consider doing surgery on her knees. (*Id.*). She diagnosed uncontrolled type 2 diabetes mellitus with hyperglycemia and prescribed Januvia. (Tr. 514).

On December 7, 2020, Ms. Farrell met with Meredith Pressnell, APRN-CNP, for a follow up appointment concerning weight management. (Tr. 607). Ms. Farrell reported her blood pressure is under control, knee pain and fatigue limits her ability to exercise, and she does not wear her CPAP. (Tr. 607-08, 613).

On December 9, 2020, Ms. Farrell met with Dr. McMillin for evaluation of bilateral foot pain, right greater than left. (Tr. 616). Dr. McMillin advised Ms. Farrell to continue wearing her diabetic shoes. (Tr. 621).

On January 4, 2021, Ms. Farrell met with orthopedic surgeon Glenn Wera, M.D., for knee pain, described as achy and worse with ambulation. (Tr. 625). Ms. Farrell reported working in a grocery store and always being on her feet. (*Id.*). She endorsed grinding in her knees and wished to pursue surgery. (*Id.*). X-rays showed severe osteoarthritis of the knees with varus angulation deformity and severe tricompartmental degenerative disease. (Tr. 638). Physical examination of the knees revealed audible crepitus, varus deformity, pain with range of motion testing; Ms. Farrell walked with a limp. (Tr. 626, 632). She was informed that her blood sugars need to come down before surgery. (Tr. 627).

On March 31, 2021, Ms. Farrell met with Dr. McMillin for evaluation of bilateral foot pain, right greater than left. (Tr. 644). Dr. McMillin noted continued midfoot arthritis, metatarsalgia, and peripheral neuropathy, and advised Ms. Farrell to continue wearing her diabetic shoes. (Tr. 649).

On referral, Ms. Farrell met with vascular surgeon Levon Khojayan, M.D., on May 10, 2021. (Tr. 653). She complained of bilateral pain in her feet and knees. (*Id.*). Dr. Khojayan noted Ms. Farrell also had venous insufficiency and edema in the bilateral lower extremities and left-sided iliac stenosis. (*Id.*, Tr. 658). Physical examination revealed bilateral lower extremity edema and hyperpigmentation at the shins but was otherwise normal. (Tr. 658). Dr. Khojayan assessed peripheral artery disease and advised Ms. Farrell to wear compression socks, ordered vascular segmental pressure testing, and referred her to physical therapy. (Tr. 659, 669).

On June 24, 2021, Ms. Farrell returned to NP Dowell's office and reported not taking metformin or Januvia because she "doesn't like the idea of putting something into her body." (Tr. 671). Physical examination revealed swelling and crepitus in the bilateral knees, edema in the bilateral lower legs, and severe ankle pronation bilaterally. (Tr. 676). Ms. Farrell was "strongly advised" to take her diabetes medication as prescribed or she will never be able to have surgery. (Tr. 677). For peripheral vascular disease, Ms. Farrell reported not wearing compression stockings and not resting with her feet up. (*Id.*). She was strongly encouraged to wear compression stockings. (*Id.*).

On July 6, 2021, NP Dowell provided an incomplete Medical Source Statement that summarized Ms. Farrell's diagnoses, prognosis, symptoms, clinical findings, and objective signs, and treatment, but did not offer any opinions about functional limitations resulting from her impairments. (Tr. 602-05). She identified Ms. Farrell's symptoms as pain in her knees, ankles, and feet, gait disturbance, fatigue, and shortness of breath due to body habitus. (Tr. 602).

On July 28, 2021, Ms. Farrell met with Dr. McMillin for evaluation of bilateral foot pain, right greater than left. (Tr. 686). Dr. McMillin noted continued midfoot arthritis, metatarsalgia, and peripheral neuropathy, and advised Ms. Farrell to continue wearing her diabetic shoes. (Tr. 691).

III.    MEDICAL OPINIONS

On October 20, 2018, Ms. Farrell attended a consultative examination with Rikesh Patel, D.O. (Tr. 343-53). There she complained of arthritis in her knees and feet and reported that physical activity exacerbates the pain and affects her ability to work secondary to difficulty standing, walking, bending, lifting, and reaching. (Tr. 343). Dr. Patel noted Ms. Farrell did not

attend the examination with an assistive device and displayed a steady and symmetric gait. (Tr. 346). Physical examination revealed some tenderness to palpation along the bilateral knees at the medial and lateral joint lines and on the patellofemoral joint with range of motion testing and significant crepitus (*Id.*). Ms. Farrell was not able to squat and rise from that position, had moderate difficulty walking on her heels and on her toes, and could stand but not hop on one foot bilaterally. (*Id.*). On manual muscle testing, she had limited range of motion in her knees, with active and passive flexion only to 90 degrees. (*Id.*). Dr. Patel determined Ms. Farrell has no limitation in sitting, moderate limitations in standing and walking due to bilateral knee pain, and can occasionally bend, stoop, crouch, and squat. (Tr. 347).

On September 5, 2020, Ms. Farrell attended a second consultative examination with Roozbeh Ahmadi, M.D. (Tr. 306-11). There she complained of bilateral knee pain and numbness and tingling in her arms, legs, and feet that affect her ability to stand and walk for prolonged periods of time. (Tr. 306). Physical examination revealed bilateral edema in her extremities, decreased sensation to light touch at the feet, swelling in the ankles, and swelling and effusion in the knees. (Tr. 309). Ms. Farrell walked with an antalgic, limping, asymmetric gait; she also had difficulty rising from a squat, moderate difficulty getting up and down from the examination table, difficulty walking on her toes, and could not walk on her heels. (Tr. 309-10). Otherwise, Ms. Farrell could not tandem walk or stand or hop on one foot bilaterally. (Tr. 310). Dr. Ahmadi determined as follows:

> The claimant has swelling in her feet consistent with peripheral vascular disease. She also has restricted range of motion in the feet due to severe arthritis. Additionally, she has pain in her feet. She also has diabetic neuropathy causing decreased sensation in both of her feet and this impairs her balance and coordination with ambulatory maneuvers. She has severe pain and tenderness as well as effusion in her knees as well.

8

> The claimant has no limitations with sitting. The claimant has moderate limitations with standing and walking due to bilateral knee and foot pain. The claimant does not need an assistive device with regard to short distances but does need one (cane) for long distances and uneven terrain. The claimant has severe limitations with lifting and carrying weight due to bilateral knee and foot pain. There are limitations with bending, stooping, crouching, and squatting and the claimant will be able to perform these occasionally due to bilateral knee and foot pain. There are no limitations on reaching, grasping, handling, fingering, and feeling. There are no relevant visual, communicative or workplace environmental limitations.

(Tr. 310-11).

On September 28, 2020, Diane Manos, M.D., reviewed Ms. Farrell's medical records and opinions from the consultative examiners and determined she was not disabled. (Tr. 77-90). Dr. Manos assessed Ms. Farrell's RFC and found she could lift and carry twenty pounds occasionally, ten pounds frequently; sit and/or walk for a total of 4 hours and sit (with normal breaks) for about six hours in an eight hour workday; occasionally climb ramps and stairs, kneel, and crouch; frequently balance and stoop; never climb ladders, ropes, or scaffolds or crawl; and must avoid all exposure to unprotected heights and dangerous machinery. (Tr. 81-82, 88-89). On January 19, 2021, Steve McKee, M.D., reviewed updated medical records and adopted Dr. Manos' RFC. (Tr. 96-98, 104-06).

## IV.   OTHER RELEVANT EVIDENCE

Ms. Farrell completed an Adult Function Report describing how her conditions limit her ability to work. (Tr. 246-52). She explained that her feet and legs ache every day, she cannot really bend her knees, she has a lot of arthritis in her lower extremities, and she was told she needs surgery. (Tr. 246). Ms. Farrell endorsed being able to perform household chores and yard work, but at a slower pace and less frequently because her knees do not bend. (Tr. 248). She reported her conditions affect her abilities to lift, squat, bend, walk, kneel, and climb stairs. (Tr. 251).

## V.    ADMINISTRATIVE HEARING

At the administrative hearing, Ms. Farrell testified the pain in her knees and feet, diabetes, and edema keep her from being able to sit or stand too long at one time without a break. (Tr. 48). Diclofenac greatly helped with her pain, but her kidney doctor told her to stop taking it. (Tr. 49). She takes ibuprofen on occasion, but it does not help. (*Id.*). Standing for too long makes the pain worse while sitting too long causes stiffness. (*Id.*). At her current job, she can stand from 8:30 a.m. until about 11:00-11:30 a.m. before she needs a break. (Tr. 50). Ms. Farrell can sit for a little bit longer than she is able to stand, but the associated stiffness makes it difficult to get moving again. (Tr. 52).

Ms. Farrell has peripheral vascular disease with associated leg swelling from the knee down. (Tr. 54). She is supposed to wear compression socks to help with blood flow, but she cannot get the socks to stay up and they leave rings around her legs for days. (*Id.*). Her legs feel very heavy, as if she is wearing cement boots. (*Id.*). She elevates her legs to reduce the swelling. (*Id.*).

Ms. Farrell testified her blood sugars remain high regardless of whether she takes her medication. (Tr. 57). She can prepare meals but is constantly alternating between sitting and standing because she cannot do either for too long. (Tr. 62). Ms. Farrell used to go to the basement to do her laundry but goes to the laundromat instead because it is easier on her legs. (Tr. 63).

VE Alida Coles identified Ms. Farrell's past relevant work as a receptionist (DOT 237.367-038; sedentary exertion as generally performed, light as actually performed; SVP 4). The ALJ asked the VE if a hypothetical individual of Ms. Farrell's age, education, and experience could perform Ms. Farrell's past work as a receptionist if the individual was limited to the following: lifting and

carrying ten pounds frequently, twenty pounds occasionally; standing or walking four hours; using

foot pedals occasionally; never climb ladders, ropes, or scaffolds and never crawl; occasionally

climb ramps and stairs; occasionally kneel and crouch; frequently balance and stoop; must avoid

all exposure to work in unprotected heights and being around or operating dangerous moving

machinery such as power saws and jackhammers; and without restrictions on commercial driving.

(Tr. 65-66). The VE testified the hypothetical individual could perform Ms. Farrell's past relevant

work. (Tr. 66). If the hypothetical individual needed to elevate her legs to above a 45-degree angle,

she would not be able to perform Ms. Farrell's past relevant work and would be precluded from all

other work. (Tr. 71). If the individual could not sit for more than four hours in an eight-hour

workday, the individual would be unable to perform Ms. Farrell's past relevant work. (Tr. 72).

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since March 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis of both knees; degenerative joint disease of both ankles; diabetes mellitus; peripheral neuropathy; and peripheral artery disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand or walk limited to 4 hours each; occasional foot pedals bilaterally; never climb

ladders, ropes, or scaffolds, and never crawl; occasionally climb ramps and stairs; occasionally kneel and crouch; frequently balance and stoop; must avoid all exposure to work in unprotected heights, and being around or operating dangerous moving machinery such as power saws and jackhammers; and there are no restrictions on commercial driving.

6.    The claimant is capable of performing past relevant work as a receptionist (237.367-038, sedentary, SVP 4, and performed at light). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 15-26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the

court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

13

than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters,* 127 F.3d at 529.

## DISCUSSION

Ms. Farrell alleges the ALJ erred in three respects. In her first two arguments, she claims the ALJ committed harmful error when she failed to (i) classify her obesity as a severe impairment at Step Two, and (ii) consider the functional effects posed by her obesity when assessing her RFC.

(Pl.'s Br., ECF #10, PageID 743, 752). Finally, she takes issue with the RFC itself, claiming the ALJ did not properly apply the criteria of Social Security Ruling (SSR) 16-3p and improperly found that she could perform past relevant work as a receptionist. (*Id.* at PageID 743).

The Commissioner responds that the ALJ appropriately considered Ms. Farrell's obesity and substantial evidence supports both the ALJ's evaluation of her symptoms and the conclusion that she can perform past relevant work as a receptionist. (Comm'r's Br., ECF #12, PageID 773, 775, 777).

### A.    The ALJ did not err in the evaluation of Ms. Farrell's obesity.

At Step Two, the Commissioner must determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). This is a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (internal quotation marks and citations omitted), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). A severe impairment is one that has "more than a minimal effect" on the claimant's ability to do basic work activities. SSR 85-28, 1985 WL 56856, at *3. After an ALJ makes a finding of severity as to even one alleged impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. Therefore, even if the ALJ errs by failing to find a particular impairment severe at Step Two, the error is harmless if the ALJ considers all the individual's impairments in the remaining steps of the disability analysis. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, at Step Two, the ALJ determined Ms. Farrell's obesity was a non-severe impairment:

> The record supports the diagnosis of obesity. While the record shows obesity, the claimant has not alleged, and the record does not support that the claimant has any

15

functional limitations related to obesity alone, or in combination with the claimant's other impairments. The undersigned considered the impact the claimant's obesity has on the claimant's functioning and other impairments at the remaining steps of the sequential analysis pursuant to Social Security Ruling 19-2p.
...

The undersigned evaluated the aforementioned non-severe impairments in combination with the claimant's severe impairments in determining the claimant's residual functional capacity consistent with 20 CFR 416.945 and 404.1545. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(Tr. 15-16).

The remainder of the decision is bereft of further analysis about how Ms. Farrell's obesity affects her abilities to function and otherwise refers to obesity only by noting Ms. Farrell's BMI.

Ms. Farrell claims the ALJ's analysis runs afoul of SSR 19-2p. This Ruling offers guidance on how obesity is evaluated in disability claims. SSR 19-2p, 2019 WL 2374244, at *1. The Ruling provides that "[t]he combined effects of obesity with other impairment(s) may be greater than the effects of each of the impairments considered separately," and requires the ALJ to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." *Id.* at *2, *4. The Ruling specifically instructs ALJs not to "make general assumptions about the severity or functional effects of obesity combined with other impairment(s)," because "[o]besity combined with other impairments may or may not increase the severity or functional limitations of the other impairment"; rather, the ALJ is to "evaluate each case based on information in the record." *Id.* at *4.

In this case, Ms. Farrell did not list obesity as a condition limiting her ability to work. (*See* Tr. 258). In her Adult Function Report, Ms. Farrell did not identify obesity as limiting her ability to function or as exacerbating her pain. (*See* Tr. 246-52). At the administrative hearing, Ms. Farrell

did not assert that her obesity limited her ability to function or exacerbated her pain. The Sixth Circuit has recognized that "[t]he absence of further elaboration on the issue of obesity likely stems from the fact that [plaintiff] failed to present evidence of any functional limitations resulting specifically from her obesity." *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (citing *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," because "[a]lthough his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions")); *see also Gray v. Comm'r of Soc. Sec.*, No. 20-10099, 2021 WL 298826, at *6 (E.D. Mich. Jan. 11, 2021) (finding limited findings regarding obesity sufficient where "there is no medical evidence in the record indicating that [plaintiff's] obesity increases the severity of her functional limitations or other impairments"), *report and recommendation adopted*, 2021 WL 289422 (E.D. Mich. Jan. 28, 2021); *see also McWilliams v. Comm'r of Soc. Sec.*, No. 5:19-cv-2363, 2020 WL 7684864, at *12 (N.D. Ohio Aug. 26, 2020) ("Plaintiff's speculation that the ALJ was obligated to conclude that the combined impact of his obesity caused additional but unspecified limitations beyond those already accounted for in the RFC does not provide a basis for reversal.").

Only now does Ms. Farrell claim that "the combination of [her] obesity and other physical problems imposed greater functional limitations than if each of the impairments were considered separately," and argues such a finding is "corroborated by the treating nurse practitioner when she indicated that [Ms.] Farrell had shortness of breath due to her body habitus along with other opinions as set forth above." (ECF #10 at PageID 752) (citing Tr. 602). It is not clear what "other

opinions" corroborate Ms. Farrell's claim. The treating physician Ms. Farrell refers to, NP Dowell, did not offer any opinions about the effect Ms. Farrell's conditions have on her ability to function. Other than to note the existence of a symptom, Ms. Farrell has not shown specifically how obesity, alone or in combination with other impairments, limited her ability to a degree inconsistent with the RFC.

I note no consultative examiner or State agency medical consultant found that her obesity, either alone or in combination, limits her ability to function. Where a plaintiff disagrees that the analysis of obesity is adequate, she must further meet the "burden of showing specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, *8 (N.D. Ohio June 20, 2017), *report and recommendation adopted*, 2017 WL 2908857 (N.D. Ohio July 7, 2017). Ms. Farrell has not met her burden.

For these reasons, I decline to recommend a remand based on Ms. Farrell's first argument.

**B.    The ALJ reasonably evaluated Ms. Farrell's statements about her symptoms and the resulting conclusions are supported by substantial evidence.**

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2017 WL 5180304. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.*

At the second stage, recognizing that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-

18

medical evidence, the ALJ considers the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case. *Id.* In addition, the ALJ uses the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) to evaluate the individual's statements:

1. A claimant's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6. Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7. Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors, only those germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount subjective testimony when the ALJ finds those complaints to be inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. However, the ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical

evidence supports a finding that the individual is disabled. SSR 16-3p at *5. Similarly, the ALJ may not reject an individual's statements about his symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged but must carefully consider other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2); *see also* SSR 16-3p at *6.

The ALJ is required to explain which of an individual's symptoms are consistent or inconsistent with the evidence of record and how the ALJ's evaluation of the symptoms led to his conclusions. SSR 16-3p at *9. The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The ALJ must limit his evaluation "to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *11. The ALJ need not use any "magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

20

The ALJ evaluated Ms. Farrell's statements about the intensity, persistence, and limiting effects of her symptoms and determined as follows:

The claimant's allegations of disabling physical functional limitations are not entirely consistent with the evidence of record. The claimant reported difficulty being on her feet for long due to pain; and she has issues with lifting, squatting, bending, walking, kneeling, and stair climbing. She testified that she is most limited by pain in her feet, knees, and leg edema, preventing her from standing for long without a break; she can stand from 8:30am to 11:00am before she needs to sit down at her part-time job; she asked her physician, nurse practitioner Dowell, for a note indicating that she is able to use a stool at her current job, but the physician did not provide it; she can sit for longer than she can stand, but it's difficult for her to get moving again due to stiffness; she has edema from the knees down; the swelling is alleviated by using water pills, watching her diet, and elevating them; and she has some issues controlling her blood glucose, blood pressure, and cholesterol.

She also did not report any difficulties with personal care; she takes care of family pets by feeding and walking them; she prepares some meals; she is able to perform some household chores, but it takes her longer; she gets around daily by driving; and she is able to shop in stores for personal needs, regularly. The claimant reported working part-time and watching her grandchildren during the period at issue. The claimant testified that she is able to prepare meals and do the dishes.

As to the issue of leg elevation, the claimant was advised to elevate and rest her knees due to pain. There is no reference in the record that the claimant requires leg elevation due to edema or otherwise, as a work accommodation or limitation. There is no evidence of the need or use of an ambulatory aid. As to all physical limitations, the claimant testified that she asked her physician, nurse practitioner Dowell, for a note indicating the need for a stool at her current job, but the physician did not provide it. In fact, nurse practitioner Dowell did not indicate any specific physical limitations, including that she did not indicate the need to elevate legs.

The claimant's physical examination findings include edema, some decreased range of motion with pain in the lower extremities, including the feet and ankles, finding of an antalgic gait, and some decreased sensation in the feet; however, the record also demonstrates generally a normal gait, full 5/5 muscle strength throughout, negative straight leg raise testing bilaterally, normal coordination, negative Romberg signs, normal reflexes, no limitations with the use of the upper extremities, and full range of motion otherwise throughout. This evidence does not suggest or support limitations greater than those set forth in the above residual functional capacity assessment. The claimant's allegations of disabling limitations as

to standing, walking, and the need to elevate her legs are not entirely consistent with these examination findings and treatment.

Screening in April of 2019 showed normal ankle brachial indexes in the left and right side and mild carotid artery disease. Screening in June of 2021 was substantially similar. Imaging from October of 2020 and January of 2021 showed advanced to end-stage bilateral medial femorotibial, moderate bilateral patellofemoral, and mild to moderate bilateral lateral femorotibial compartment knee osteoarthritis, and mild right genu varus deformity. The record supports that the claimant is a candidate for bilateral knee replacements; however, her doctors will not perform the procedure due to her lack of controlled blood glucose levels. She received a prescription for custom orthotics due to peripheral neuropathy and foot impairments. The record does not support ambulatory aids other than shoe orthotics. This evidence does not suggest or support limitations greater than those set forth in the above residual functional capacity assessment. The claimant's allegations of disabling limitations as to standing, walking, and the need to elevate her legs, are not entirely consistent with this imaging and treatment.

Moreover, after reviewing the medical evidence of record available to them, including some of the aforementioned physical examination findings and imaging, the state agency medical consultants opined that the claimant is limited to light exertion, with standing and/or walking of 4 hours; occasional climbing ramps or stairs, kneeling, or crouching; never climbing ladders, ropes, or scaffolds, or crawling; frequent balancing and stooping, and must avoid all exposure to hazards such as unprotected heights or dangerous machinery. There are no persuasive medical opinions suggesting greater specific functional limitations. The claimant's allegations of disabling limitations as to standing, walking, and the need to elevate her legs are not entirely consistent with these opinions.

In sum, the claimant's alleged physical functional limitations are not entirely consistent with the claimant's reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the residual functional capacity assessment above.

(Tr. 21-22) (cleaned up).

Ms. Farrell first claims that the evidence establishes she satisfies the criteria set forth in SSR 16-3p. (ECF #10 at PageID 758). Ms. Farrell supports her assertion by summarizing all the evidence she believes meets the criteria and stating, "The ALJ reviewed this evidence and testimony and incorrectly found that [Ms.] Farrell could perform her past relevant work." (*Id.* at

22

PageID 756). Ms. Farrell later contradicts herself, claiming the ALJ ignored or disregarded certain evidence that suggests greater limitations. (*Id.* at PageID 759). She does not indicate what evidence the ALJ ignored or disregarded. Instead, she claims the evidence the ALJ reviewed supported her need to alternate between sitting and standing throughout the day and her need for a cane, that she could not stand and walk for four hours a day, that she had leg edema requiring her to elevate her legs, and that she reported pain. (*Id.* at PageID 756-57). In sum, Ms. Farrell's argument amounts to an invitation that the Court reweigh the evidence in her favor and come to a different conclusion, something this Court cannot do. *Brainard*, 889 F.2d at 681.

Ms. Farrell next claims the ALJ "failed to support her conclusions with substantial evidence." (ECF #10 at PageID 759). As recounted above, the ALJ offered a robust evaluation of Ms. Farrell's symptoms and their intensity, persistence, and limiting effects on her ability to function. The ALJ acknowledged Ms. Farrell's allegations of pain in her feet and knees and concluded her allegations were inconsistent with working part-time and watching her grandchildren during the week, the lack of evidence suggesting Ms. Farrell's need for a cane, objective medical evidence of normal muscle strength, reflexes, and coordination, and the treatment provided for pain relief, all of which are proper factors for the ALJ to consider when evaluating a claimant's statements. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, the substantial evidence standard is not a high bar to meet. It bears repeating that "[s]ubstantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw*, 966 F.2d at 1030. The ALJ's conclusions are supported by substantial evidence.

For these reasons, I decline to recommend a remand based on Ms. Farrell's second argument.

### C. The ALJ properly evaluated Ms. Farrell's RFC.

The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been considered. *Id.* at 632. An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ also must determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* In other words, the RFC assessment is based on the evidence of record and the ALJ's evaluation of the consistency of the claimant's statements regarding symptoms, *i.e.*, the SSR 16-3p analysis.

Ms. Farrell specifically limits her RFC claim to arguing the ALJ "committed harmful error when she failed to include the need for either a sit/stand option or the need to elevate legs due to continuing edema and pain," and it was "harmful error for the ALJ to erroneously find that [Ms.] Farrell could stand/walk for 4 hours in a day." (ECF #10 at PageID 760). This argument generally fails because, as addressed above, the ALJ reasonably concluded the record lacks support for Ms. Farrell's claims that she needs to elevate her legs or requires a sit/stand option and that she cannot stand/walk with normal breaks for four hours a day and supported those conclusions with substantial evidence. For these reasons, I decline to recommend a remand based on Ms. Farrell's third argument.

24

.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I conclude that the ALJ's conclusions are supported by substantial evidence. Therefore, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: October 3, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at

509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).